Good morning, Your Honors. I make this report. My name is Marina Cobb, and I represent petitioners, Mr. and Mrs. Kyolyan and their daughter. And I'm here today to discuss the issue about the BIA's denial of motion to reopen and their ruling on appeal from the prior decision that was issued in 2006. In that case, the BIA had sent the case back, remanded back to the judges for the final decision. What the BIA did in that case, it overruled the credibility, adverse credibility decision, found the past persecution, but yet the presumption, they felt that the presumption of future persecution was rebutted on the record. When the case went back to the judge, the judge reviewed the case and retained jurisdiction for 60 days so we can amend the case, the records, and submit the documents in support of in Armenia. They were killed by off-duty police officer, and the Kyolyans believed it was due to persecution that the whole family was experiencing at the time before and during the time when the accident happened. We presented the evidence to court together with the affidavits. This is in connection with the motion to reopen? Correct. The remand order to the IJ was a limited remand for purposes of entering the final order of removal. Is that correct? Correct. And that was done in November of 2006? That's correct. So does the IJ's entry of the final order of removal in 2006 trigger the 30-day period for filing a petition for review? Yes, Your Honor, and I believe so. Well, yes, and at the same time, you know, if you read the decision of the board, in their own decision, they indicated that the matter of MD, I believe, indicates that when the case is remanded for the judge for the final decision, and he retains jurisdiction for that period of time, he also is allowed to review any additional documents, you know, in his discretion to see if there is any evidence presented for the future persecution, for the claim of the future persecution, which we did submit it. Right, but in your view, when does the clock begin for purposes of filing a petition for review? Was it in 2006, November 2006, when the IJ entered the final order of removal? Yes, Your Honor, but what we are saying is that when we, when the case was remanded, it's true there's 30 days to file the appeal, you know, from the board's decision, which hasn't been done. But when the case was remanded back to the judge, and the judge retained jurisdiction, and he reopened the case by saying you have 60 days to amend the record and present the documents on the future persecution, which was done as per judge's request, I believe he kept the jurisdiction. And as a matter of fact, the I, the Board of Appeal in the, stated the precedence of matter of MD, stating that he has that jurisdiction, yet they did not address that issue at all other than just stating the general premises. And the records were amended within time, and the judge at the last hearing in, I believe it was in November 8th of 2006, decided that he had jurisdiction only on the Camacha, Malina Camacha case, just to order, you know, order of removal, rather than review the records for the future persecution. So when we file the appeal, we file appeal on his decision, plus the, by failing to reopen the case. You took it back up to the BIA. BIA, correct. And BIA reviewed the case, and they found that the records that were presented were, well, some of the records, such as the article from Yazdekana newspaper, indicating where, and specifically naming my clients in the newspaper in 2003 while they were already in the United States. When you took it back up to the BIA, though, the issue at that point was the motion to reopen. Both. We have filed the appeal and the motion to reopen. We filed the appeal from the judge's decision, and there was a separate case for the motion to reopen, and the BIA reviewed both of them. If you look at the BIA decision of 2007, February 2007, it says appeal and motion to reopen. So now procedurally that you're on appeal from that second BIA. Correct. Denial of relief, is it appropriate for the court now to reach back to the 2006 decision, given that you did not, that you missed the 30-day window, essentially, from appealing the 2006 order of removal entered by the IJ? And if we can reach back, then under what circumstances should the court of appeals reach back versus not be able to reach back? I understand the court's concern regarding this. Unfortunately, this was never clearly, well, let's put it this way. I wasn't representing the clients at the time when they got the decision. I entered into representing them, I believe, in April, which was already too late. The prior attorney never filed the appeal from their, from the BIA. Isn't this, I mean, so basically the real problem, I think, that we have from the motion to reopen is that the BIA back in its decision, I guess, in 2006, it decided that there was a presumption of future persecution in 2006. So it decided that, and under the regulations, once it decides that, it is required to, in our case law, it is required to remand to the IJ for factual determination whether certain circumstances exist under the regulations that just changed country conditions. There's only a few. They articulate three. And then the IJ is supposed to have a remand that does that. So the BIA fundamentally erred in remanding to the IJ at that time a limited remand for the purposes of only entering a final order of removal. So the IJ obviously isn't going to buck the BIA. He says, okay, I have this limited remand. This is what I'm going to do. And he does, okay, so that set the whole course off track because once they find the existence of a presumption of future persecution, the burden of proof under the regulations shifts to the government to prove that some changed country conditions or that the alien can relocate. That didn't happen here. Instead, this order of removal. So you come back and you bring in this new evidence, and it is new evidence of persecution. That never is allowed to go to the fact finder either because the BIA decides that the IJ couldn't have considered it because of the nature of the remand. And the BIA then fails to consider the new evidence in light of the presumption, which it had already found. It already found this presumption exists, and it doesn't consider the new evidence in light of the presumption. So that error by the BIA back in 2006 taints everything that happened forward. And I'm not sure you've made this argument, but that's the way I see it. There's just been a series of failure to comply with its own regulations and with Ninth Circuit law and the shifting and the presumption and the burden of proof all the way through this proceeding. I don't know what we do now. I don't even know if we can remedy it now, if you filed the right things to allow us to remedy it. I believe I did argue this in my brief. But let me just, and I understand what, I completely agree with you as to what happened in the case. My point here is that even though the appeal was not filed, you know, from the original BIA decision where they erroneously remanded only for the limited purposes, the at the time of the. That was an error, right? I believe that, yes. Is that error brought to the BIA's attention or brought. Yes. In a motion to reconsider. In an appeal, both.  And it's in the record. They didn't recognize the error. They did not. They actually dismissed that altogether, didn't even address that. They addressed only the new evidence. But my point, Your Honor, is that even though it wasn't filed, the appeal wasn't filed on time, you know, from that decision, when the court, when the judge had jurisdiction to issue. Immigration judge. I'm sorry. Immigration judge. Judge Einhorn. When he had the jurisdiction to issue the final order according to the BIA's decision, he opened the record by saying you can submit the records to me for, and he basically followed what the BIA's decision and what the BIA said in general on the page, and I can direct you, Your Honor. If you just bear with me a second. It was a decision. So he did accept the evidence. Yes, he did. I see that on page 254. And also the BIA decision, if you read the first paragraph, they stated themselves that the matter of MD states that the judge, while acquiring jurisdiction, he can consider additional evidence regarding new or previously considered relief if requirements for the opening are met. And yet, even though they mentioned that in a decision, they never addressed that or addressed the issue that the judge did not consider. So in other words, my clients never had a chance to be heard on the issue of the new evidence that was presented. Was this the first motion to reopen? Yes, Your Honor. It was the first. And was it timely made? The first one, yes. Okay. So it was the first motion to reopen, and it was timely made. Correct. Okay. And that's my argument to the Court, is that even if this is correct in terms of the not, you know, being timely with the appeal, you know, on the first BIA decision, the judge erred, we believe, by not considering the records, even though he opened the case for that. So what should the IHA have done on the remand? Should he have just disregarded the BIA's instruction that it was a limited remand? I believe that he should have considered that brief that I filed as motion to reopen, not just the supplemental documents for the future prosecution, but motion to reopen, you know, just because it wasn't called that way, you know, that's what it's for. And the judge should have considered those records and ruled. Because he does say he has sympathy for your case. Correct. But he felt constrained by the BIA. Correct. And also, because he was, his address credibility determination was reversed and past prosecution was established, he felt really bad because he felt, you know, I don't remember if it was on the record or not, he felt sort of responsible for not ruling correctly the first time. And my clients were devastated, you know. Two of their four children were killed. And what is the evidence that that was as a result of being persecuted by the, was it the Sidris? It's not Yazdi only. It's a Yazdi community which asked in the article that was obviously published way before anything happened, where they were asking the government of Armenia to stop the persecution in their community by Kylians, naming them specifically, and saying that we're giving them warning that they should stop. Even though they're not here in Armenia, they're still continuing to do that. And that's exactly what my clients testified in their individual hearings, that they continue to be very active, you know, in providing the documentation and the religious documents and religious material to their community, Pentecostal community, so they can continue to proselytize. If you read the declarations of Ms. Kylians' brother, he specifically stated that even though he never mentioned this before, because he didn't want to worry them, there were two other incidents where the family was actually pursued by assailants, by car. We have a pattern here. There was a pattern of incidences where a vehicle was trying to run people off the road and kill them. It would happen in 1999 or 98, I'm sorry, when my clients were still in Armenia and they were the husband pushed the wife off the road, you know, because he was trying to save her life. That was the first time. The second time were unfortunately when the actual incident did take place. And the third time it was when the brother took the remaining child to U.S. consulate in order to get the visa to exit Armenia, with the documents of the accident showing that there is a danger to the third child, please issue the visa so she can reunite with her parents in America, and it wasn't issued. As they were leaving consulate on the way from there, they were run off the road, according to the declaration of the brother. They were not injured, but there was an attempt on their life. And the day in declaration he said there were two other attempts even before that. So there is a pattern, similar pattern, of the attempts on their life because of their religious persecution. And the BIA decided that there was no link between it because, and the only reason they gave is that because the police report that we presented indicated that the police officer went voluntarily back to the police, you know, basically turning himself in for this incident. I mean, we know that in Armenia, you know, it's a corrupt country, and the police not necessarily will present, you know, an honest report. So it was easier for the police officer, since there were so many witnesses, to come back and say, well, I did it, but I'm sorry, it was an accident. We don't believe that. And there were plenty of witnesses, unfortunately, when it comes to testifying against police, they're all afraid of the retaliation. They fear for their own life. All right. You've exceeded your time, so thank you very much, counsel. May it please the Court, Matthew George for the Attorney General. Judge Wardlaw, I believe you have set out very eloquently the sort of procedural history of this case and the errors that the Board has made in its 2006 decision. Perhaps the proper course the Board should have taken was, after it found a past persecution finding in this case, it should have remanded to the immigration judge for factual findings on the well-founded fear and the presumption and given the government the opportunity to rebut that presumption. However, unfortunately, that's not the way things happened, and it did make this limited remand for entry of a final order of removal. When the immigration judge did that in 2006, as petitioners conceded in their reply brief and in argument today, that was the final order of removal. And so had petitioners wanted to challenge the Board's error or the Board's well-founded fear finding, the proper decision to file a petition for review from was the immigration judge's decision. Was it? We have a case that says that it isn't final or appealable to us until the BIA has affirmed the final order of removal. That would normally be the case, and had the Board not remanded in this case, then appealing from the Board's decision would have been the proper course of events. And sort of in somewhat similar contexts, and particularly in the voluntary departure context, where the Board enters remands for entry or a decision on voluntary departure, this Court has held that that is a final order of removal, even though there's still sort of a lingering issue of voluntary departure that's going back to the immigration judge. Well, you also have Section 1101A of the Immigration Act, 47B1, that says the order described under Paragraph A, which is a removal order, shall become final upon the earlier of, at one, a determination by the Board of Immigration Appeals affirming such order, or, two, the expiration of the period in which the alien is permitted to seek review. So what was that period? That was the entry of the immigration judge's order in 2006. And you're saying they did not seek review of that order? To the extent they sought review, they were seeking review of the immigration judge's authority to consider their new evidence. Essentially... But they sought review, right? They sought review of the immigration judge's decision not to consider their new evidence. Well, was it so limited because it wasn't the point of that to overturn the order of removal? Their issue in the 2006 litigation was getting this new evidence before the agency. So that they wouldn't be removed, right? Yes, Your Honor. But it was in the context of a motion to reopen. It was not in the context of... So you're saying because they didn't file an appeal, and rather filed a motion to reopen, they're out of luck? I'm sorry. Could you say that one more time, Your Honor? I'm not sure I'm understanding the question. You're saying you agree with pretty much all the procedure. Yes. And that it wasn't, you agree that it wasn't followed. But you're saying that because the petitioner decided to file a motion to reopen instead of an appeal from the immigration judge's order, that they're out of luck? Yes.  So was their motion to reopen filed within the time in which they could have taken an appeal? I believe it was. So why shouldn't it have been construed as an appeal? Because, well, the Supreme Court has said in stone that motions to reopen are separate from final orders of removal. It's a separate process. You're saying this is an appeal. So we all the time routinely, the petitioner files the wrong form of something, and we, I mean, I'm sure you've experienced that. We construe it as what it should have been filed as, especially if it's filed within the correct time frame. Why wouldn't that have been the appropriate course? Because the procedure of this case is a little different. Because the immigration judge has no jurisdiction to reconsider or review the board's decision in this case, sort of appealing that 2006 immigration judge's order is limited to the jurisdictional issue that the board addressed in its 2007 order. The reason this case is procedurally off is because the BIA didn't follow the procedures it's supposed to follow. You're right about that. So it's the government's fault that this thing got off-kilter procedurally. It's not the government's fault. It's the board's fault. The board's fault. Okay. Well, isn't the board the government? I don't know. Not? It's not the Department of Homeland Security. It's not the Department of Homeland Security. I mean, I guess it is a quasi-independent part of the Department of Justice. Whatever it is, it's its fault that this thing got off procedurally kilter. So what do you think we should do about this? Unfortunately, I don't think there's anything the court can do. The opportunities to correct that error were to either petition for review from the board's original decision or to petition for review from the immigration judge's 2006 decision on remand. And petitioners have done neither of that. But shouldn't the BIA the second time around have considered the motion to reopen in light of its prior finding that there was a presumption of a fear of future persecution, which it didn't do? At that point, it had already found that presumption rebutted. But it doesn't have the power to do that. You're smiling at me. You know it doesn't have the power to do it. I don't know what the board was thinking. I can't speak for what they do. Well, you're speaking for them. Once it went back to the BIA on a motion for reconsideration, what appears to me from the record is that the board viewed it through the limited lens of review for motions to reopen. But the problem with that is that they were essentially tainted or infected by the prior error with regard to the well-founded fear of future persecution. So now that the petitioners are properly before this court on a challenge of the BIA's decision with regard to the motion to reopen, couldn't we reach back to the underlying 2006 mistakes and correct that? Because the BIA, in considering the motion to reopen, relied on their prior erroneous findings, so to speak. The only thing that's before the court is the board's 2007 decision. That's the only thing that there's been a timely petition for review. I just wanted to clarify that. Right. I understand that. But the 2007 decision essentially relied on the error that the BIA made in 2006. Did it not? I think that's really stretching at least the board's logic in its decision. The board considered the motion sort of independently on the new evidence that's in the motion and evaluated whether that meant the ---- That's what the board says in its order. It says, we note, however, that we remanded solely for the immigration judge to enter a removal order. Well, that's the error from the 2006 decision. It was supposed to remand. So what Judge Wynn is saying is correct, that it is relying on the limited power it gave the immigration judge in its 2006 order. In terms of that part of the board's decision, is it saying that the only possible thing to review at that point is, yes, is whether the immigration judge had jurisdiction to consider the new evidence? But that's because it made the wrong decision in the first place. That's sort of the procedural history that led to that point, yes. They're relying on it. Okay. So let me ask you something. Do you think this case is an appropriate case for mediation or should we just go on to roll on it? I think the court should just rule on it. Okay. Yes, Your Honor. And to the extent the court wants to consider the new evidence itself ---- I don't think we would do that. That's not our role. Just like if ---- Well, in terms of whether the board abuses discretion in denying the motion to reopen. It might have the presumption of future persecution. We have a case on that. Well, it sounds to me like the government is conceding that the BIA made a mistake in not handling the presumption properly. And so when the motion to reopen came back before the BIA, it didn't give the petitioner the benefit of the presumption. And that's really the problem. It sounds to me like mediation might be a good idea for this case. I'm not sure I can speak one way or another. If the court thinks that would be an appropriate avenue to pursue, I think we'd be amenable to it. We've been doing ---- I mean, I don't know which way I think at this point we should roll. But I don't know how many of these cases you've experienced, but we've been referring a number of them recently to mediation. And they resulted in a joint motion to reopen by, I guess, you and the director and the petitioner, which have been successful lately. I mean, there's been clear ---- is this here? Clear BIA here. Perhaps in terms of correcting procedural errors, I think that would probably be the only proper jurisdictional way to do it is to have a joint motion to reopen. It would be our position that the court wouldn't have jurisdiction to review those issues, but the court may disagree with that position. And so perhaps mediation would be a favorable solution. And then, of course, if mediation fails, it would still come back to us, and you could still ---- Okay. All right. Well, thank you very much. Let me ask the defense counsel what she thinks about the possibility of mediation. Well, obviously we won't have any problems with mediation, but I'd just like to stress one point. We believe that regardless of what happened with the presumption issue, the motion to reopen was filed with the immigration judge timely with the facts, what happened in August. The evidence was presented even before that, you know, regarding the country condition. And the judge opened that for 60 days. So what we're trying to reiterate, that it's not ---- and I agree with everything that the court said, you know, mediation, and that's a ---- you know, there was a mistake, and it was done by BIA. But regardless of all this, I think the court has enough information here regarding the motion to reopen that was filed with the judge, and then the appeal was filed, and it was denied, was filed with the BIA on the issue whether or not the evidence were new and whether or not there was a nexus between the religious persecution and the death of the two girls. And there were more than enough evidence. It wasn't just the declaration. There was other evidence that were presented that linked it. And the BIA basically said, well, we can't consider this because the Yazdekana newspaper article is an old evidence that were in the records, but they were not emphasized during the testimony. You don't have to emphasize it. It was part of the record. You know, the court is required to look at the whole record as a whole and review all of the evidence. All right. Does anyone have any further questions? Okay. Thank you very much. Thank you very much.
judges: Simon, Wardlaw, Nguyen